```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MICHAEL CONWAY,<br>Proprietor EHT Tavern, LLC.<br>doing business as<br>REF'S TAPHOUSE & GRILL,<br><br>           Plaintiff,<br><br>    v.<br><br>RAYMOND DAVIS,<br>CHIEF OF POLICE EGG HARBOR<br>TOWNSHIP POLICE DEPARTMENT,<br><br>           Defendant. | 1:16-cv-04511-NLH-AMD<br><br>**OPINION** |

**APPEARANCES**:

MICHAEL CONWAY
230 MALLARD LANE
PLEASANTVILLE, NJ 08232
    Appearing *pro se*

A. MICHAEL BARKER
BARKER, GELFAND & JAMES
LINWOOD GREENE
210 NEW ROAD
SUITE 12
LINWOOD, NJ 08221
    On behalf of Defendant Raymond Davis

**HILLMAN, District Judge**

    This matter concerns claims by Plaintiff, Michael Conway, Proprietor of EHT Tavern, LLC, which does business as Ref's Taphouse & Grill in Egg Harbor Township, New Jersey. Plaintiff claims his application to extend temporarily his liquor license to the outside area of his restaurant for one night on June 12, 2016 was denied because he would not pay a

$400 fee to Egg Harbor Township as demanded by the Township's police chief, Defendant Raymond Davis. Plaintiff claims that the $400 fee was arbitrarily imposed and amounted to extortion. Because Plaintiff refused to pay the fee, Davis voided Plaintiff's Division of Alcoholic Beverage Control ("ABC") temporary application.

Plaintiff claims that the decision to extend a liquor licenses rests solely with the ABC, and therefore Davis was without legal authority to unilaterally deny his application, which constitutes a violation of his due process rights. Plaintiff claims that he suffered a loss of business revenue and is seeking $750,000 in damages.[1]

---

[1] Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). Thus, "[t]o establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

The Court previously decided two motions to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) by Davis, the mayor, a township administrator, and three town council members. The Court dismissed Plaintiff's claims against all the defendants except for his claims against Davis. (See Docket No. 18.) The Court found that Plaintiff sufficiently pleaded his procedural and substantive due process violation claims against Davis. Plaintiff claims that Davis deprived him of a protected property interest – the ability to avail himself of his rights as a liquor license holder to seek a license extension – by voiding his application without any process to challenge that result, except for paying the demanded fee, a demand that had no legal basis and therefore could be found to shock the conscience. (Docket No. 18 at 12.)

The Court also found, with regard to Davis's argument that Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies, that because Plaintiff's complaint did not indicate whether he exhausted his administrative remedies with the ABC, it could not be dismissed pursuant to Rule 12(b)(6), since the failure of a plaintiff to exhaust his administrative remedies is an affirmative defense to be pleaded by the defendant, and a district court may only dismiss a complaint when the plaintiff's failure to exhaust administrative remedies is apparent from the face of the complaint. (Docket

No. 18 at 17.)

Shortly after the Court issued its Opinion, Davis filed a motion to dismiss Plaintiff's complaint for lack of standing pursuant to Rule 12(b)(1). Davis argues that Plaintiff lacks standing to bring his due process violation claims because he never held a property interest in the liquor license on which he bases his claims. Plaintiff has opposed Davis's motion.

## DISCUSSION

### A. Subject matter jurisdiction

Because Plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

### B. Standard for a Motion to Dismiss pursuant Rule 12(b)(1)

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (citing Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)). There is "a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Federal

4

Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). On a facial attack, "the court must consider the allegations of the complaint as true," and a court employs the Rule 12(b)(6) standard for assessment. Id.; see also Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (explaining "a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party").

"The factual attack, however, differs greatly," because (1) "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims," and (2) "the plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortensen, 549 F.2d at 891.

Davis, the Defendant, has submitted documents regarding the ownership trail of the liquor license at issue, which are not attached to Plaintiff's complaint. Procedurally, this suggests Defendant is making a factual attack to the Complaint. However, our Court of Appeals has made clear that a factual attack may only occur after the filing of an answer. Id. at 891 (providing that a Rule 12(b)(1) factual attack "may occur at any stage of the proceedings, from the time the answer has been served until

after the trial has been completed"). Here, no answer has been filed as of yet, with Defendant proceeding, as he may, first with a motion to dismiss. Accordingly, the Court must view Davis's motion as a facial attack under the Rule 12(b)(6) standard.[2]

Nonetheless, the Court may consider the liquor license documents, because Plaintiff does not dispute their authenticity, and because Plaintiff's claims are based on his contention that his claims arise from his interest in liquor license.[3] See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining in

---

[2] The difference between the two procedural postures is subtle but meaningful. Since a factual attack is premature the Court will not resolve the apparent factual dispute between parties over the precise nature of Plaintiff's interest in the business and liquor license. See Aichele, 757 F.3d at 358 (providing that when considering a factual attack, a court may weigh and consider evidence outside the pleadings). On other hand, under the Rule 12(b)(6) standard, the Court may consider the liquor license documents because Plaintiff's claims are based on his interest in the liquor license so long as the Court also considers the allegations in the complaint as true. As the Court explains more fully infra the Plaintiff claims a financial interest in the business and liquor license, an allegation the Court accepts as true for purposes of this motion. Moreover, the apparent fact that the town did not eventually allow Plaintiff to own some or all of the liquor license is not, in light of the allegations of the complaint, a complete bar to his constitutional claims.

[3] Counsel for Davis states that he did not obtain the liquor license documents until after the first Rule 12(b)(6) motion to dismiss was filed.

assessing a Rule 12(b)(6) motion, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

**C.   Analysis**

Plaintiff's due process claims[4] hinge on whether he has a property interest that Davis deprived him of.  See Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139–40 (3d Cir. 2000) (providing that to prevail on a procedural due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection

---

[4] The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  It is well established that the Due Process Clause contains both a procedural and substantive component. American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012).  To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (citation omitted).  To state a substantive due process claim, a plaintiff must show: (1) he was deprived of a protected property interest; and (2) a state actor acted with a degree of culpability that shocks the conscience. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008); Maple Prop., Inc. v. Twp. of Upper Providence, 151 F. App'x 174, 179 (3d Cir. 2005) (finding conscience-shocking behavior where the misconduct involves corruption, self-dealing, or a concomitant infringement on other fundamental individual liberties).

7

applies"). As the Court noted in its prior Opinion, a liquor license has been held to constitute a property interest protectable by the Fourteenth Amendment. See <u>Sea Girt Restaurant and Tavern Owners Ass'n, Inc. v. Borough of Sea Girt, New Jersey</u>, 625 F. Supp. 1482, 1488 (D.N.J. 1986) (holding that a New Jersey liquor license is an interest in property for purposes of federal due process analysis). Plaintiff alleges that he has a property interest in obtaining a temporary extension of his liquor license to the outside area of his establishment, and Davis deprived him of that right through extortion.

Davis contends, however, that Plaintiff has never held ownership rights to the liquor license at issue, and he therefore cannot maintain a claim for a deprivation of property in which he does not have a property right. Davis's motion explains the history of ownership of the liquor license as follows:

- In 2009, an application was submitted for a person-to-person transfer of the liquor license in question.
- There are two applications - one dated 6/5/2009 and the other dated 10/28/2009.
- The 10/28/2009 application amends the 6/6/2009 application.
- The 2009 applications transferred ownership to Biraj Patel (98%), Sonal Pareek (1%), and Maria Diamantis (1%).

8

- This transfer in ownership was approved by the Township Committee on 11/24/2009.
- In 2014, an application, dated 6/2/2014, was submitted to change corporate structure.
- The 2014 application, made by Mr. Patel, sought to convey a 30% interest in EHT Tavern LLC to Madz Enterprises LLC.
- The 2014 application identifies Michael Conway as controlling 51% of Madz and Dawn Conway controlling 49% of Madz Enterprises LLC.
- The 2014 application was denied on 11/9/2016.
- In 2017, an application was submitted to change corporate structure and to make the license inactive.
- Per the 2017 application, Ms. Diamantis took back the license from Mr. Patel in the Fall of 2016.
- The name on the license has always remained as EHT Tavern, LLC.
- Ms. Diamantis now owns a 100% interest in the license.

(Docket No. 20-1 at 5-6.)

Davis argues that he could not have violated Plaintiff's substantive and procedural due process rights when Plaintiff's liquor license extension request was denied because Plaintiff did not hold an interest in the liquor license at that time. Davis further argues that even if Plaintiff's 2014 application

to transfer ownership of the liquor license had been approved instead of denied in November 2016, he still did not have ownership rights at the time of the alleged deprivation.

In response, Plaintiff argues that he does have a property interest in the liquor license because during the pendency of the 2014 application to change the corporate structure of the liquor license, Plaintiff paid the ABC licensing fee for "an extended period of time," and on May 30, 2016, Plaintiff paid $1,200 to cover the fee for the extension of the license for use at the EHT Tavern. Plaintiff's claims can also be fairly construed to assert that, although he did not have a formal and government sanctioned interest in the liquor license at the time of the alleged incident, he had acquired a contractual interest through Madz Enterprises LLC subject to regulatory approval, in the entity that held the liquor license.

Plaintiff also contends that Davis retaliated against him for questioning how the Township was able to operate a country club with a liquor license in direct competition with private businesses in the Township, and how the Township did not have to pay the extension of premises fees like the other businesses. Plaintiff claims that Township patrol units began to block his single driveway at the EHT Tavern, which prevented vehicles from entering or leaving the business parking lot, which was in direct retaliation and punishment for Plaintiff raising

questions about the ethical practices of the Township.[5]

To establish standing, a plaintiff must show: "(1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." National Collegiate Athletic Ass'n v. Governor of New Jersey, 730 F.3d 208, 218–19 (3d Cir. 2013) (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)). The contours of the injury-in-fact requirement, although "not precisely defined, are very generous." Id.

---

[5] As he did in response to the defendants' Rule 12(b)(6) motions to dismiss, Plaintiff again takes issue with the failure of Davis to engage in discovery. But as the Court noted previously, the discovery process does not begin until after the initial scheduling conference, which is triggered by a defendant filing his answer to the plaintiff's complaint. See Local Civil Rule 16.1(a)(1) ("The initial conference shall be scheduled within 60 days of filing an initial answer, unless deferred by the Magistrate Judge due to the pendency of a dispositive or other motion."); Local Civil Rule 26.1(b)(2) ("The initial meeting of parties as required in Fed. R. Civ. P. 26(f) shall be convened at least 21 days before the initial scheduling conference, and the proposed discovery plan under Fed. R. Civ. P. 26(f)(3) shall be generated at that meeting and delivered to the Magistrate Judge within 14 days after the meeting of parties."). Davis's Rule 12(b)(1) motion does not constitute an answer, and he therefore has had no obligation to engage in the formal discovery process during the pendency of his motion. The Court notes that, as set forth in footnote 2 above, Plaintiff has not been prejudiced by a lack of discovery in that the Court has accepted all of his allegations has true under Fed. R. Civ. P. 12(b)(6) and Defendant is barred from a factual attack on his standing since no answer has been filed (and hence no discovery obtained).

(citation omitted).  "Indeed, all that Article III requires is an identifiable trifle of injury, which may exist if the plaintiff has a personal stake in the outcome of [the] litigation."  Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992) (noting that to satisfy the injury-in-fact requirement the "injury must affect the plaintiff in a personal and individual way")) (other citation omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  Lujan, 504 U.S. at 561.

The injury sufficient to confer standing is particularly relaxed where the allegation asserts a violation of a constitutional right.  As the Supreme Court recently noted, there is a well-established historic distinction between efforts to vindicate a public right, for example a violation of a regulatory statute, and a private right such as a constitutional tort.  See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1551 (2016).  The latter requires a heightened showing of standing in order to avoid entangling the courts in policy disputes or to enlist the courts in the enforcement of statutes where a private right of action is unclear and the harm hypothetical.  Such disputes are not cases or controversies with the meaning of Article III and

are best left to the discretion of the relevant executive branch agencies that administer and enforce regulatory statutes.

In contrast, a plaintiff alleging a violation of a private right need only meet a lessened measure of standing. This is because violations of certain private rights are actionable even in the absence of actual damages, where the harm is intangible such as defamation, or where damages are difficult to calculate. See Spokeo, 136 S. Ct. at 1551 ("In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. . . . Many traditional remedies for private-rights causes of action . . . are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right."). As Justice Thomas noted in his concurrence in Spokeo, one of the clearest examples of this is an allegation of a violation of a constitutional right where a demonstrated violation warrants an award of nominal damages even in the absence of actual damages. Spokeo, 136 S. Ct. at 1552 (Thomas, J., concurring). The absence of economic harm should not shield a government official who violates his oath and breaches the duty he owes to a citizen to act according to the Constitution.

Davis's position that Plaintiff's lack of technical ownership of the liquor license prevents him from prosecuting

13

his claims is too narrow a view on the standing requirement. Here, Plaintiff alleges a violation of a private right not a public one. Plaintiff claims that he was extorted by Davis relative to his business which was lawfully engaged in the sale of liquor under a valid liquor license, and his business was potentially entitled to a temporary extension of premises license. That extortion allegation alone demonstrates, when accepted as true, a cognizable injury.[6]

Under the Hobbs Act, "extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The term "fear" includes the fear of economic loss. <u>Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.</u>, 140 F.3d 494, 522 (3d Cir. 1998) (citations omitted). When Davis allegedly told Plaintiff that he was required to pay a $400 fee, rather than the $75 fee, for the temporary extension of license permit or else Davis would void his application, Plaintiff was faced with two unattractive "choices" – either consent to the payment of $400 through fear of economic loss or refuse to pay and suffer economic loss. Being subjected to either of these two "choices" inflicted injury on Plaintiff sufficient to confer standing.

---

[6] The Court makes no finding as to the veracity of Plaintiff's allegations.

14

It makes no sense, of course, as Defendant's argument seems to imply, that Plaintiff, an alleged victim of an extortion, would only have standing if Plaintiff paid Davis the $400 he allegedly demanded. It would be perverse to suggest that only the victim of a successful extortion would have standing and one who resists unlawful government action would not. Moreover, the allegation seems to incorporate the subjective belief of the Defendant that Plaintiff would have the economic interest or incentive to pay the extorted amount. The fact that Plaintiff alleges that Davis sought the payment from him makes his claim plausible that he had sufficient economic stake in the venture to establish injury-in-fact. Otherwise, assuming Plaintiff's allegations are true, Defendant's defense of lack of standing is, in essence, a claim that Davis tried to extort the wrong person - i.e., the de facto liquor license holder rather than the technical liquor license holder. That would seem to be an incomplete defense to the constitutional violations allegedly perpetrated by Davis.

Plaintiff's allegations in his complaint that his substantive and procedural due process rights were violated by Davis's alleged extortion related to Plaintiff's temporary extension of liquor license permit are sufficient to establish Article III standing. See, e.g., National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (explaining

that nothing more than the complaint's extortion and injury allegations was needed to confer standing at the motion to dismiss stage).

Moreover, the Court is convinced that Plaintiff has standing even from an economic or financial point of view. Here, even though the liquor license applications and approvals submitted by Davis show that Plaintiff was never an official "holder" of the license at issue, either by his business entity Madz Enterprises, LLC or himself individually, Plaintiff's complaint[7] alleges that he was the proprietor of EHT Tavern, which operated under a valid liquor license. The use of the word "proprietor" conveys an ownership or other financial stake in the profitability of the enterprise as a whole. See Black's Law Dictionary, 9th Ed., p. 1339 ("proprietor, n. An owner, esp. one who runs a business."). Plaintiff's complaint further alleges that he, by way of operating EHT Tavern, suffered damages in the form of lost business revenue by the denial of the liquor license extension permit, which was caused by Davis's alleged extortion of Plaintiff.

He also alleges he had a contractual interest in the company that controlled the license and paid the company's ABC

---

[7] In the prior Opinion, the Court construed Plaintiff's complaint to be his original complaint and amended complaint in combination. (See Docket No. 18 at 3 n.2.)

fees when required.  His role as "proprietor" or owner, investor, and his expenditures on behalf of the company are sufficient, alone and certainly in combination, to make out a plausible claim for economic injury sufficient to confer standing.  These allegations, which identify an injury-in-fact, causation, and redressability by the Court, are sufficient to confer standing to Plaintiff at the motion to dismiss stage. See Buck Foston's New Brunswick LLC v. Cahill, 2013 WL 5435289, at *10 (D.N.J. 2013) (where an LLC applied for and was denied a transfer of liquor license application, and the defendants argued that one of the plaintiffs, who was not the transfer applicant, lacked standing to bring suit for losses arising out of the denial, the court finding that the individual plaintiff "spent significant funds on the project prior to the Application, amply demonstrating his requisite personal stake in the controversy").  Accordingly, Davis's motion to dismiss under Rule 12(b)(1) must be denied.

Now that the case will go forward, the Court notes that additional allegations, facts, and legal premises have been raised by the parties' submissions outside of Plaintiff's current complaint.  In the Court's prior Opinion, the Court observed that obtaining an extension of premises license to sell

alcohol is not limited to liquor license holders.[8] The Court also observed that the exhaustion of administrative remedies requirement in the liquor license process, argued by Davis to also preclude Plaintiff's claims, may be waived in the circumstances alleged by Plaintiff.[9] Through Davis's current motion, the Court further observes that the timeline of events concerning Plaintiff's efforts related to the sale of alcohol at his establishment suggest,[10] and Plaintiff has contended, that he

---

[8] We note this provides a separate basis to conclude that Plaintiff has alleged an injury-in-fact sufficient to confer standing. See Docket No. 18 at 11 n.7, where the Court noted: "Plaintiff states in his complaint that he is a liquor license owner, but it appears that temporary permits to sell alcoholic beverages are available to non-liquor license owners as well. See N.J.S.A. 33:1-74; see also, infra, the Court's discussion of the statutes and regulations governing this type of temporary permit."

[9] See Docket No. 18 at 17-18 n.10, where the Court noted: "[B]ased on Plaintiff's assertions in his complaint and opposition brief, the administrative remedies provided by the ABC regulations appear to warrant the assessment of the factors set forth in McCarthy v. Madigan, 503 U.S. 140, 144–45 (1992) to determine whether Plaintiff should be relieved of those administrative procedures."

[10] On June 2, 2014, an application was submitted to convey 30% interest of the liquor license to Plaintiff and his wife as members of Madz Enterprises, LLC. It appears that no decision on that application was made for over two years, and Plaintiff claims that he paid the fees during that time. Meanwhile, Plaintiff's extension of premises permit application was denied on May 5, 2016, and his July 17, 2016 request for a hearing before an administrative law judge was denied, because, according to Plaintiff, like the permit requirement the administrative appeal required Davis's signature, which he refused to provide. Plaintiff filed the instant suit on July 27, 2016, and the defendants filed waivers of service on

has faced retaliation regarding his criticism of the liquor license process.[11]

The Third Circuit has directed that in civil rights cases a district court must offer to a plaintiff the opportunity to file an amended complaint - irrespective of whether it is requested - when considering whether to dismiss a complaint, unless doing so would be inequitable or futile. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Even though the Court is not dismissing Plaintiff's complaint against Davis, the Court will afford Plaintiff leave to file an amended complaint if he wishes to amend his complaint, since doing so would not be futile or inequitable.

Indeed, an amended pleading is necessary under these circumstances. Here, it is required because Plaintiff, proceeding pro se, has asserted his claims piecemeal and in

---

September 9, 2016 and November 3, 2016. Then, after the application to convey 30% of the liquor license to Plaintiff had been pending for over two years, on November 9, 2016, the Township denied the application.

[11] We note that these allegations also undermine Defendant's assertion that the denial of the liquor license transfer is additional evidence that Plaintiff never had a sufficient property interest in the liquor license to establish standing. Plaintiff alleges that the denial was part of an effort to retaliate against him. In that sense, the denial of the license transfer is not proof of lack of standing, it is an additional allegation of an unconstitutional deprivation of a property right. A state actor may not unconstitutionally deny a property right and then assert that the lack of that property interest proves Plaintiff's lack of standing.

three separate documents; his original complaint, his first amended complaint, and in his brief in opposition to Defendant's motion to dismiss.  While Plaintiff is proceeding pro se, he still has an obligation to abide by the rules of civil procedure.  In order to accord the Defendant fair notice of all Plaintiff's claims, Plaintiff will be directed to file a Second Amended Complaint that encompasses and sets forth in a short and plain statement all of his legal claims and the facts to support those claims.  Claims asserted in the Second Amended complaint, and the facts to support them, that are consistent with Plaintiff's claims as construed and described in this Opinion, will be allowed to proceed and will require an answer from the Defendant.

## **CONCLUSION**

For the reasons expressed above, Defendant Raymond Davis's motion to dismiss Plaintiff's complaint will be denied. Plaintiff is afforded 30 days to file an amended complaint consistent with this Opinion if he wishes to do so.  Davis's answer shall be filed 15 days after Plaintiff files his amended complaint, or 15 days after the expiration of the 30 days.

An appropriate Order will be entered.


Date:  March 23, 2018             s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.